Rule 23 order filed
February 13, 2007;
Motion to publish granted
March 27, 2007.

NO. 5-04-0415

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| CARL BRDAR and VICKY BRDAR, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs-Appellees and Cross-Appellants, | ) Madison County. |
| | ) |
| v. | ) |
| | ) |
| COTTRELL, INC., | ) |
| | ) |
| Defendant-Appellant and Cross-Appellee, | ) |
| | ) |
| and | ) |
| | ) |
| CASSENS & SONS, INC.; CASSENS CORPORATION; | ) No. 00-L-181 |
| UNKNOWN COMMERCIAL LESSORS IN THE | ) |
| CASSENS FAMILY; UNKNOWN CHAIN AND | ) |
| RATCHET COMPONENT DISTRIBUTORS AND | ) |
| MANUFACTURERS; DAIMLERCHRYSLER | ) |
| CORPORATION, f/k/a CHRYSLER CORPORATION; | ) |
| and GENERAL MOTORS CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| ------------------------------------------------------------------------ | ) |
| COTTRELL, INC., | ) |
| | ) |
| Third-Party Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| C.F. BENDER and VULCAN CHAIN CORPORATION, | ) |
| | ) |
| Third-Party Defendants-Appellees, | ) |
| | ) |
| and | ) |
| | ) |
| CASSENS TRANSPORT COMPANY, | ) Honorable |
| | ) A. A. Matoesian, |
| Third-Party Defendant. | ) Judge, presiding. |

_____

1

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant cargo trailer manufacturer appeals a judgment in favor of the plaintiffs, a truck driver and his wife, for injuries the driver sustained when a chain broke while he was attempting to tie down an automobile to a cargo trailer. The defendant argues that the court erred and abused its discretion by (1) denying its motion to dismiss on grounds of *forum non conveniens*, (2) denying a motion to strike the plaintiffs' disclosure of an expert witness and allowing her to testify, (3) admitting certain documents into evidence, (4) refusing to give two of its proffered jury instructions, and (5) dismissing its third-party complaint seeking contribution from two potential chain distributors on the basis of the statute of limitations. The plaintiffs cross-appeal, arguing that (1) they are entitled to a new trial on loss-of-consortium and punitive damages and (2) the court abused its discretion in denying their motion for expert witness rebuttal costs. We affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Defendant Cottrell, Inc. (Cottrell), manufactures cargo trailers that are used for hauling automobiles. Automobiles are tied down to the cargo trailers using a chain-and-ratchet system attached to the trailers. One company that purchases cargo trailers from Cottrell is third-party defendant Cassens Transport Company (Cassens Transport). Plaintiff Carl Brdar began working as a truck driver hauling cars for Cassens Transport in 1995. He was based at the company's Smyrna, Tennessee, facility. On May 21, 1999, Carl Brdar was loading Dodge Durangos onto a Cottrell trailer in Newark, Delaware, when the chain broke. As a result, Brdar injured his neck and shoulder. A key issue in the resulting lawsuit was what caused the chain to break–specifically, at issue was whether the ratchet system created too much force for the type of chain used by Cottrell.

On March 1, 2000, Carl Brdar and his wife, Vicky, filed a complaint against Cottrell,

General Motors Corp. (GM), DaimlerChrysler Corp. (DaimlerChrysler), Cassens & Sons, Inc., and Cassens Corp. The complaint also named "unknown chain[-]and[-]ratchet component manufacturers and distributors." The complaint contained counts alleging both negligence and strict liability, one count seeking punitive damages, and one count seeking loss-of-consortium damages for Vicky Brdar. The prayer for punitive damages was later stricken without prejudice pursuant to section 2-604.1 of the Code of Civil Procedure (735 ILCS 5/2-604.1 (West 2000)).

In July and August 2000, Cottrell, DaimlerChrysler, Cassens & Sons, Inc., and Cassens Corp. filed motions to dismiss the action on the basis of *forum non conveniens*. They argued that the case should be filed in Tennessee, where Carl Brdar lived and worked. GM did not file a forum motion or join in any of the motions filed by the other defendants. The Cassens defendants (both of which are based in Madison County) later admitted that a Madison County trial would not be inconvenient for them. The trial court denied the forum motions.

On May 22, 2002, the court entered a case management order. The order provided, in relevant part, that the plaintiffs were to answer Supreme Court Rule 213 interrogatories (177 Ill. 2d R. 213) by December 1, 2002, and that the trial was set for June 2, 2003.

On December 4, 2002, in response to an interrogatory propounded by DaimlerChrysler, the Brdars disclosed their intention to call Linda Weseman and Jerry Micklow as witnesses. The disclosure indicated that each witness "may testify that the ratchet system is unreasonably dangerous and caused the plaintiff's injuries." It further indicated that neither witness had prepared any reports in connection with this litigation but that both had authored numerous reports in connection with previous litigation involving the same defendants and the same alleged defects. Those reports, the disclosure stated, were already in the hands of the attorneys for the defendants.

3

On December 12, 2002, the Brdars sought leave of the court to make these Rule 213 disclosures two days out of time, which the court granted without objection from Cottrell. (We note that December 1, the date set by the court for the disclosures, fell on a weekend; thus the December 4 disclosures were two days out of time, rather than three.) On February 28, 2003, the Brdars filed a supplementary disclosure regarding Linda Weseman's testimony. This disclosure indicated that she would testify, "The ratchet tie[-]down systems[,] as designed and as typically used by drivers[,] are unreasonably dangerous and defective[,] as such systems are prone to sudden releases, malfunctions, broken chains[,] and excessive force."

On April 21, 2003, the Brdars filed a motion to reinstate their claim for punitive damages. The court reserved its ruling on the motion until the trial.

On May 29, 2003, GM filed a motion to strike the disclosure of Weseman, arguing that the December 2002 disclosure was inadequate for failing to reference any reports prepared for this case. In its motion, GM also pointed out that Supreme Court Rule 213(f) (177 Ill. 2d R. 213(f)) requires parties to disclose the opinions of expert witnesses; however, it did not specifically allege either that the motion failed to disclose Weseman's opinion or that the disclosure provided was inadequate. DaimlerChrysler filed a substantially identical motion, although the record is not clear on the exact timing of DaimlerChrysler's motion. When GM filed its May 29 motion, the trial was still set for June 2. Although Cottrell filed a motion to adopt the motions of GM and DaimlerChrysler, it did not do so prior to the June 2 trial setting.

On the eve of the trial, Cottrell learned that Cassens Transport had located the chain that had been involved in Carl Brdar's accident at its Smyrna, Tennessee, terminal. According to Cottrell, counsel for Cassens Transport had previously indicated in unrelated litigation that it had located only one broken chain and that was not the chain involved in

4

Carl Brdar's accident. As a result of finding the broken chain at issue, Cottrell learned that it was not the chain originally attached to the cargo trailer when it was manufactured. At the time the trailer involved was manufactured, Cottrell purchased its chains exclusively from Columbus McKinnon, which stamped all the chains it manufactured with its initials, CM. The chain involved was not stamped with those initials. Thus, it had to have been purchased as a replacement by Cassens Transport. As a result of this discovery, the trial was continued until September to allow Cottrell to file third-party complaints.

On June 5, 2003, Cottrell filed a motion to apply Tennessee law to the case. On the same day, Cottrell filed a motion *in limine* to exclude certain industry reports about which it expected the Brdars' retained expert to testify. Cottrell argued that there was no showing that the products or accidents described in the various reports were similar to the Cottrell ratchet system at issue here or to Carl Brdar's accident.

During the first week in June, the Brdars reached a settlement with all named defendants except Cottrell. On June 9, the court entered an order finding that the settlements were in good faith and dismissing the claims against those defendants. The court also entered a written order resetting the trial for September 8 and denying a request by Cottrell to reopen discovery among the parties already in the lawsuit. On the same day, Cottrell filed a motion to adopt DaimlerChrysler's and GM's motions to strike the disclosure of Weseman.

On August 13, 2003, Cottrell filed a third-party complaint against Cassens Transport, Vulcan Chain Corp. (Vulcan Chain), and C.F. Bender. Vulcan Chain and C.F. Bender are chain distributors from whom Cassens Transport purchased replacement chains for its cargo trailers. Each of the three third-party defendants filed a motion to dismiss the third-party complaint on the ground that the statute of limitations on the claims had already run. On September 8, the court granted the third-party defendants' motions to dismiss, denied Cottrell's motion to apply Tennessee law, and reset the trial for February 2004.

5

The matter came to trial on February 2, 2004. The court denied the pending motions *in limine* to bar Weseman's testimony and exclude the industry reports and any testimony related to them, ruling that the industry reports would be admitted for the purpose of showing that Cottrell had notice of the problems with its ratchet system.

The Brdars called to the stand their retained expert, Linda Weseman. As she took the stand, Cottrell renewed its previous objections to her testimony. Weseman is a mechanical engineer who specializes in biomechanics, a field that overlaps with ergonomics. She explained the way the ratchet system works. The ratchet system includes a winch bar, which magnifies the amount of force the driver is able to apply while tying down cars to the trailer so the force is sufficient to hold the vehicles in place. She testified–without objection–that the gear ratio of this system is 30 to 1. That means that for every pound of force actually applied by the driver, 30 pounds of force are applied to the chain. She explained that this ratio could be increased either by using a longer winch bar or by extending the winch bar by adding a piece of pipe to it.

Weseman explained the concept of a "working-load limit" for chains used in the tie-down assembly. This is the limit that a given chain can safely handle when the chains are actually used to haul vehicles on the trailers. The working-load limit is half of the stress-test limit, which is the amount of weight the chain can hold when brand new. Weseman further explained why the working-load limit is only half the stress test limit. First, the ratchet system involves wrapping the chain around a mechanism to hold it in place at one end, which applies high stress concentration on the points of the chain that make contact with the system. Second, as the trailers are driven over bumps in the road, the tied-down vehicles are jostled, which increases the amount of tension in the chain. The working-load limit is the amount of force that can safely be applied to the chain taking into account the aforementioned factors that increase tension above that amount.

6

Most significantly, Weseman testified that chains generally break due to wearing that occurs over time as a result of force in excess of the working load. She explained that each time too much force is applied to the chain–especially to the welds, which are the least flexible part of a chain link–"you are subject to teeny-tiny little microscopic fractures" developing in the weld which, over time, accumulate to the point where the chain can break. Weseman testified that the working-load limit for system 7 chains, the type of chain used on Cottrell trailers, is 3,150 pounds. In order to tighten the chain to achieve that level, the driver needs to apply 105 pounds of pressure (105 x 30 = 3,150), but Cassens Transport drivers are required to be able to exert between 46 and 150 pounds of pressure to tie down the vehicles they transport.

Weseman testified that the precise amount of force Carl Brdar was exerting on the winch bar when he was injured could only be determined if someone had used strain-testing equipment to measure it while he was loading the Durango. She testified, however, that the range could be estimated based on the amount of force necessary to tie down the Durango. She testified that the amount of force necessary to tie down a smaller vehicle would be 70 to 90 pounds. Thus, the amount of force needed to tie down the Durango SUV would be more than that; she gave a possible range of 90 to 180 pounds and opined that it was most likely in the range of 150 to 170 pounds.

At the close of the plaintiffs' case in chief, the court denied the Brdars' motion to reinstate their prayer for punitive damages. In ruling, the court stated that statutory language provided that, in order to recover punitive damages for an action arising after March 9, 1995, a plaintiff had to prove "*by clear and convincing evidence* that the defendant acted, quote, with an evil motive, or with a reckless and outrageous indifference to a highly unreasonable risk of harm, and with a conscious indifference to the rights and safety of others." (Emphasis added.) This statement tracks the language of former section 2-1115.05(b) of the Code of

7

Civil Procedure (735 ILCS 5/2-1115.05(b) (West 1996)). Counsel for the plaintiffs attempted to call to the court's attention that the legislation that enacted that statute had been declared unconstitutional, but the court interrupted and denied the motion.

During its case in chief, Cottrell called Jerry Purswell as an expert witness. He testified that the gear ratio was really 17.8 to 1, not 30 to 1 as Weseman had testified. He explained that he calculated this on the basis of various measurements, including the ratchet head, which had a diameter of 3⅜ inches. After hearing this testimony, the Brdars recalled Weseman as a rebuttal witness. Weseman testified that Purswell calculated his 17.8-to-1 gear ratio using the wrong end of the ratchet head. She stated that he should have used the measurement of the other end, which had a diameter of only one inch, and that, therefore, Purswell's calculations were not correct.

On February 6, the jury returned a verdict of $1,486,584.40 for Carl Brdar and $0 for Vicky Brdar. The court entered a judgment on the verdict the same day.

On February 25, 2004, Cottrell filed a motion for an extension of time in which to file a posttrial motion. The basis for the delay was a need to get trial transcripts, which were not yet available. The court granted the motion with no objection from the Brdars. Although Cottrell served the Brdars with notice of its motion for an extension of time, it did not serve Vulcan Chain or C.F. Bender.

On March 5, 2004, the Brdars filed a motion for costs incurred in calling Weseman as a rebuttal witness. They contended that they were required to call her in rebuttal as a result of surprise testimony by Cottrell's witness, Jerry Purswell. Cottrell filed subsequent motions for an extension of time to file posttrial motions on March 24 and April 16. On April 26, 2004, the court entered an order granting the extension of time sought by Cottrell. The same day, Cottrell filed its posttrial motion seeking a judgment notwithstanding the verdict or, in the alternative, a new trial.

8

On May 14, 2004, Vulcan Chain filed a motion to strike Cottrell's posttrial motion on the grounds that Vulcan Chain had not been served with notice of the motion. On May 24, the Brdars filed a motion for a new trial limited to punitive damages and loss-of-consortium damages. The Brdars never expressly sought leave to file a late posttrial motion; however, they filed a motion seeking a *nunc pro tunc* order by the court making the order granting an extension of time to file a late posttrial motion applicable to all the parties and a motion requesting that the court make a Supreme Court Rule 304(a) finding (155 Ill. 2d R. 304(a)).

On June 30, 2004, the court ruled on all the pending motions. Pursuant to the Brdars' request, it made a finding that there was no just reason to delay the appeal of the order (see 155 Ill. 2d R. 304(a)). It entered a *nunc pro tunc* order rendering the extension of time previously granted to Cottrell applicable to all the parties. Finally, it denied Cottrell's posttrial motion, the Brdars' motion for costs, the Brdar's motion for a new trial, and Vulcan Chain's motion to strike Cottrell's motion. Later that day, Cottrell filed its notice of appeal. The Brdars filed a notice of cross-appeal on July 7.

## II. JURISDICTION

Vulcan Chain argues that we should dismiss this appeal for a lack of jurisdiction, and Cottrell argues that we should dismiss the Brdars' cross-appeal for a lack of jurisdiction. Because both arguments center on the timing of the various posttrial motions that were filed, we consider them together. We find that we have jurisdiction.

Vulcan Chain argues that because it did not receive notice that Cottrell had filed motions for additional time to file its posttrial motion until it was notified by the court on April 22, 2004, it believed the February 6 order became final when 30 days lapsed after its entry. Citing Supreme Court Rule 104(b) (134 Ill. 2d R. 104(b)) and *Savage v. Pho*, 312 Ill. App. 3d 553, 727 N.E.2d 1052 (2000), Vulcan Chain argues that the orders granting Cottrell extensions of time to file its posttrial motion should be voided because Vulcan Chain and the

9

other third-party defendants had not been served with notice of Cottrell's requests for additional time. Voiding the orders granting the extensions would render Cottrell's posttrial motion untimely. Because only a timely posttrial motion directed at the verdict tolls the time limit for filing an appeal, this would also mean this court would lack jurisdiction to consider Cottrell's appeal. See 210 Ill. 2d R. 274 (providing that "each *timely* postjudgment motion shall toll the finality and appealability of the judgment" (emphasis added)); 155 Ill. 2d R. 301 (providing that filing a notice of appeal is jurisdictional).

Cottrell, however, argues that an order allowing an extension of time for filing a posttrial motion should be voided on the basis of a lack of notice only if the party complaining that it lacked notice has suffered prejudice as a result. See *Savage*, 312 Ill. App. 3d at 557, 727 N.E.2d at 1055. Cottrell further contends that Vulcan Chain suffered no prejudice because the notice it got was sufficient to allow it to appear at the hearing on the posttrial motion to oppose it and because the motion was denied, leaving in place the February 6 order.

Both of these arguments overlook the Brdars' timely March 5 motion for expert witness rebuttal costs. This timely motion injected into the action a new claim. Thus, the February 6 order could not be appealed by any party until the court either disposed of the claim or entered a finding that there was no just reason to delay the appeal or enforcement of the order (155 Ill. 2d R. 304(a)). See *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 468-69, 563 N.E.2d 459, 465 (1990). The court did both on June 30, and Cottrell filed its appeal the same day. Thus, Cottrell's notice of appeal was timely, and we have jurisdiction to consider the appeal.

Likewise, we find that we have jurisdiction to hear the Brdars' cross-appeal. Once a timely appeal is filed, any party may file a cross-appeal within 10 days of receiving notice of the appeal or within the time that would be allowed for that party to file its own appeal,

10

whichever is later. 155 Ill. 2d R. 303(a)(3). The Brdars filed their cross-appeal seven days after Cottrell filed its appeal. It is thus timely, and we need not consider Cottrell's arguments regarding the timing of the Brdars' motion for a new trial on punitive and loss-of-consortium damages.

## III. COTTRELL'S APPEAL

Cottrell argues that the court erred by (1) allowing Linda Weseman to testify, (2) admitting 18 documents that it contends were hearsay evidence without proper foundation, (3) refusing to give Cottrell's proffered jury instructions on sole proximate cause and the necessity for the plaintiffs to prove that the trailer was in the same condition when the chain broke that it was in when it left Cottrell's possession, (4) dismissing its third-party complaint against C.F. Bender and Vulcan Chain (we note that Cottrell voluntarily dismissed its third-party complaint against Cassens Transport and that Cassens Transport is not a party to this appeal), and (5) denying its motion to dismiss on *forum non conveniens* grounds. We find none of these arguments persuasive.

## A. Expert Witness Linda Weseman

Cottrell first argues that the court abused its discretion by allowing Weseman to testify. Although Cottrell's brief contains a litany of complaints about her testimony–including an implicit challenge to her qualifications as an expert and a charge that its attorneys did not have the opportunity to depose her–Cottrell states in its reply brief that its appeal is limited to the following four issues: (1) the adequacy of the Brdars' disclosures about Weseman's testimony pursuant to Rule 213(f), (2) the similarity between Carl Brdar's accident and the prior accidents described in industry reports discussed during Weseman's testimony, (3) whether Weseman's methodology is generally accepted in her field, and (4) whether she assumed facts not in evidence in testifying about Carl Brdar's accident. We address these arguments in turn.

11

Whether to admit expert testimony pursuant to Rule 213 is a decision within the discretion of the trial court. Unless the court abuses this discretion, we will not overturn its decision. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109, 806 N.E.2d 645, 651 (2004). In determining whether an abuse of discretion has occurred, we consider the purposes meant to be served by the discovery rules, including Rule 213. See *Gee v. Treece*, 365 Ill. App. 3d 1029, 1038, 851 N.E.2d 605, 613 (2006). The rules are intended to work together to discourage tactical gamesmanship and avoid surprise (see *Sullivan*, 209 Ill. 2d at 109-10, 806 N.E.2d at 652) by ensuring that discovery is completed no later than 60 days prior to a trial (*Gee*, 365 Ill. App. 3d at 1036, 851 N.E.2d at 611). With these principles in mind, we consider the timing of the Brdars' disclosures and Cottrell's challenges to Weseman's testimony in the proceedings below.

As previously noted, none of the defendants objected when the Brdars filed their initial disclosure two days late or when they sought leave to file the disclosure late one week after that. This occurred in December 2002, with the trial set for June 2003, seven months away. Late in February 2003 the Brdars filed the supplemental disclosure Cottrell now challenges. At that time the trial was still set for early June 2003, three months away. No party lodged any objection to the disclosure until May 29, 2003, just days before the trial was set to begin, and Cottrell did not formally adopt its codefendants' motions until after the trial had been continued. The purpose for disclosures under Rule 213 is to permit opposing parties to depose the disclosed experts and prepare to respond to their anticipated testimony. Even assuming the disclosures were untimely or inadequate, there was ample time for Cottrell to object promptly and seek fuller disclosure in time to prepare to respond to Weseman's testimony at the trial. Cottrell made no attempts to do so prior to the original trial setting in this matter (which, as stated earlier, was not continued until the eve of the trial).

In this regard, the instant case is analogous to this court's previous decision in

*Hastings v. Gulledge*, 272 Ill. App. 3d 861, 651 N.E.2d 778 (1995). There, the plaintiff argued on appeal that the trial court abused its discretion in allowing the defendant's expert to testify after he had refused to answer questions posed to him during his deposition. *Hastings*, 272 Ill. App. 3d at 867, 651 N.E.2d at 783. Rather than ask the court for an order to compel the witness to answer, the plaintiff "waited until the day of trial" to ask that his testimony be stricken. *Hastings*, 272 Ill. App. 3d at 867, 651 N.E.2d at 783.

On appeal, this court found that the trial court properly exercised its discretion in refusing to strike or exclude the witness's testimony absent a request to compel compliance prior to the trial. *Hastings*, 272 Ill. App. 3d at 867, 651 N.E.2d at 784. Here, too, Cottrell never sought an order to compel a more detailed disclosure, waiting instead until after the original trial setting had been continued, due to its own last-minute discovery of the chain, to seek to exclude her testimony instead. This is the very type of tactical gamesmanship the discovery rules are meant to discourage.

We also note that the June 5 motion to exclude the industry reports Cottrell expected Weseman to testify about actually names several of the reports, which belies any claim that Cottrell–which had deposed and cross-examined Weseman in four previous cases involving the same issues–was surprised by the substance of her testimony. In light of these circumstances, we conclude that the court properly exercised its discretion in denying the motions to exclude Weseman's testimony on grounds of late and/or inadequate disclosure.

Cottrell further contends, however, that the court should have limited her testimony because (1) the industry reports and other documents about which she testified did not deal with incidents or equipment substantially similar to those at issue, (2) her methodology was not widely accepted in the field, and (3) her testimony assumed facts not in evidence relating to Carl Brdar's accident. We find that Cottrell has waived all three arguments.

Although Cottrell renewed the objections to Weseman's testimony and the exhibits on

13

the grounds raised in the pretrial motions, it did not make any new objections during her testimony related to any of these arguments. Cottrell's motion to exclude the reports and any testimony about them raised only the admissibility issue; it did not argue that Weseman's opinion was baseless. Further, while Weseman did state that she relied in part on these reports in forming her opinion, nearly all of her testimony about them related to how widely known the problems with the ratchet system were in the car-hauling industry and whether Cottrell had notice of these reports. In fact, she described her testimony about the way in which chains could break as "basic metallurgic science." To the extent that Cottrell argues that Weseman's opinion itself was undermined by any differences between the accidents described in the reports and Carl Brdar's accident, the argument is waived. We will consider the propriety of allowing Weseman to testify about the contents of the documents in the next section.

With respect to Cottrell's remaining arguments about Weseman's testimony, the issues of Weseman's methodology and the alleged assumption of facts not in evidence were never raised at the trial and are therefore waived. We note in passing, however, that Cottrell's argument quotes out of context Weseman's testimony about the facts surrounding Brdar's accident. During Cottrell's vigorous and extensive cross-examination, Weseman admitted that there were "a lot of details" she did not know about the accident—all of which she considered unnecessary to her determination that excessive force on the chain caused it to break for reasons she explained. She acknowledged that Carl Brdar testified that he did not believe he was applying excessive force when he tied down the Durango, but she emphasized that this meant only that he was using no more force than he believed was necessary to hold the Durango in place. This is consistent with Weseman's conclusion that the amount of force needed to tie down the Durango was above the working-load limit for the system 7 chain.

In sum, we find that the trial court acted within its discretion in allowing Weseman

14

to testify.

## B. Plaintiffs' Documentary Evidence

Cottrell next argues that the trial court erred in admitting 18 different documents into evidence and allowing Weseman to testify about the contents of these documents without a limiting instruction. Cottrell further argues that the error was compounded when the court allowed the documents to go to the jury room and when counsel for the Brdars referred to them during closing arguments. We disagree.

In ruling on the admissibility of the 18 documents, the court expressly stated that it was admitting them for the nonhearsay purpose of showing that Cottrell had notice of the flaws in its chain-and-ratchet system. As the Brdars point out, the court admitted the evidence prior to ruling on their motion to reinstate their claim for punitive damages. Cottrell's knowledge of the potential danger posed by the chain-and-ratchet system was relevant both to the punitive-damages claim and to the Brdars' allegations that Cottrell was negligent. Cottrell requested a limiting instruction telling the jury that the documents could be considered only to show how expert witness Weseman (who testified that she relied on them in forming her opinions) arrived at the opinions she testified to and could not be considered as substantive evidence. See Illinois Pattern Jury Instructions, Civil, No. 2.04 (2000) (hereinafter IPI Civil (2000)). The court refused this instruction. Because that is not the purpose for which the court admitted the documents, we find no error.

Cottrell further contends that the error was compounded by the court's decision to allow the documents to go to the jury room "for the jury to consider free of any evidentiary restrictions." We disagree. The trial court has great discretion to determine what documents may be sent to the jury room. *Toppel v. Redondo*, 247 Ill. App. 3d 211, 214, 617 N.E.2d 403, 405 (1993). Moreover, we note that Cottrell did *not* request an instruction that would have told the jury to consider the documents only for the purpose of determining whether Cottrell

15

had notice of the potential dangers posed by the chain-and-ratchet system (see IPI Civil (2000) No. 2.02), nor does it argue on appeal that the jury should have been so instructed. Cottrell's failure to request a proper limiting instruction does not render the court's decision to allow the documents to go to the jury room an abuse of discretion.

Finally, Cottrell points to four references in the Brdars' closing arguments to the material in the challenged exhibits. Although these references emphasized that the problems with the type of ratchet system Cottrell used on its trailers were widely known in the car-hauling industry, counsel did argue that three of the reports agreed with Weseman about the 30-to-1 gear ratio. However, Cottrell does not argue that the closing arguments themselves were prejudicial enough to require a reversal, and Cottrell did not object to the arguments at the trial. We conclude that the trial court properly admitted the 18 exhibits and denied the limiting instruction that Cottrell requested.

### C. Jury Instructions

Cottrell next argues that the court erred in refusing to give two of its proffered instructions. Both relate to the condition of the replacement chain. Cottrell asked that the jury be instructed that the plaintiffs were required to prove that the product (the Cottrell trailer) was in the same condition when it left Cottrell's control that it was in when Carl Brdar was injured. See IPI Civil (2000) Nos. 400.01, 400.02. Cottrell also requested that the jury be instructed that if it found that the sole proximate cause of the accident was someone or something other than the negligence of the defendant, it should find Cottrell not liable. See IPI Civil (2000) Nos. 12.04, 12.05. The theories behind these proffered instructions were that (1) the chain had a defective weld, which caused it to break, and/or (2) the replacement chain was the wrong type of chain for the ratchet system. We disagree.

A party is entitled to jury instructions that clearly and fairly instruct the jury on each theory of the case that is supported by the evidence. It is within the discretion of the trial

16

court to determine which issues are raised by the evidence presented and which jury instructions are thus warranted. *Brax v. Kennedy*, 363 Ill. App. 3d 343, 351, 841 N.E.2d 137, 144 (2005). A defendant is only entitled to a sole-proximate-cause instruction if there is competent evidence to support its theory that someone or something other than the defendant was the sole proximate cause of the plaintiff's injuries. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101, 658 N.E.2d 450, 459 (1995). Cottrell argues that there was evidence to support two possible theories on a sole proximate cause of Carl Brdar's accident: (1) the chain had a defective weld and/or (2) the replacement chain purchased by Cassens Transport was not a system 7 chain, the type of chain specified for use with the Cottrell ratchet system. The only testimony that the weld was defective came from Elwood Feldman, who testified as Cottrell's corporate representative and acknowledged that he is not an engineer. He testified that when chains break at the weld it is usually because the weld is defective. Feldman's lay opinion testimony regarding the underlying cause of the chain break does not rise to the level of competent evidence supporting a defective-weld theory.

With respect to the type of chain involved, two witnesses testified that it looked like a system 7 chain, and it was stamped with a number 7. Cassens Transport representative Brian Suhre testified that he could not specifically recall purchasing the replacement chain at issue–and, therefore, that he did not specifically remember purchasing a system 7 chain–but he also testified that it was Cassens Transport's policy to purchase system 7 chains for Cottrell trailers. Similarly, although Elwood Feldman testified that he could not say with certainty whether the chain was a system 7 chain, he admitted that it looked like one. The somewhat equivocal testimony of Feldman and Suhre did little to support Cottrell's theory that the chain was not a system 7 chain. We find that this testimony did not support a sole-proximate-cause instruction.

Likewise, Cottrell was not entitled to the requested instruction about the condition of

17

the trailer, due to the nature of the defect the plaintiffs alleged. Their theory was that the chain broke because the ratchet system was designed in a manner that caused it to apply excessive force to the type of chain that it was meant to be used with, the system 7 chain. As previously noted, there was no real doubt regarding the type of replacement chain involved, and Cottrell manager Elwood Feldman testified that Cottrell *expected* that its customers would need to replace chains and anticipated that they would purchase replacement chains from suppliers other than Cottrell or Columbus McKinnon. In a products liability case, the manufacturer remains liable if the product is modified in a manner that is foreseeable after it leaves the manufacturer's control. *Owens v. Midwest Tank & Manufacturing Co.*, 192 Ill. App. 3d 1039, 1044-45, 549 N.E.2d 774, 778 (1989). We conclude that the trial court properly refused both instructions.

## D. Third-Party Complaint

Cottrell argues that the court erred in dismissing its third-party complaint against C.F. Bender and Vulcan Chain on the ground that Cottrell did not file its complaint until after the statute of limitations for contribution claims had expired. We disagree.

The applicable statute of limitations provides that a contribution claim must be filed within two years after the party is served in the underlying action or within two years after the party knew or should have known of an action or omission giving rise to a contribution claim. 735 ILCS 5/13-204(b) (West 2002). Under the discovery rule, the statute of limitations begins to run once a party has sufficient knowledge to put a reasonable party on inquiry to determine whether a cause of action exists. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81 (1981). As Cottrell correctly points out, the question of when the party seeking contribution has sufficient knowledge to trigger the statute of limitations is ordinarily a question of fact for the jury. *Knox College*, 88 Ill. 2d at 416-17, 430 N.E.2d at 981. A contribution claim can only be dismissed by a court before trial if it

18

is apparent from undisputed facts that the third-party plaintiff reasonably should have known that it had a contribution claim more than two years before filing its third-party complaint. *Hochbaum v. Casiano*, 292 Ill. App. 3d 589, 593-94, 686 N.E.2d 626, 629 (1997); *LaSalle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 903, 635 N.E.2d 564, 567 (1994). We believe that standard is met here.

Vulcan Chain argues that when a complaint alleges negligence against other parties, that knowledge is sufficient to put the third-party plaintiff on inquiry notice regarding the possibility of a contribution claim. See *Bradley v. Sandoz Nutrition Corp.*, 274 Ill. App. 3d 381, 386-87, 653 N.E.2d 858, 862-63 (1995). We do not find the instant case to be precisely analogous to *Bradley*. There, an amended complaint alleged negligent treatment by a physician. The original defendant (the manufacturer of a diet supplement) thus had actual knowledge of its contribution claim against the physician and his employer immediately upon being served with the amended complaint. *Bradley*, 274 Ill. App. 3d at 386, 653 N.E.2d at 862. In the instant case, the Brdars' complaint alleged negligence by *unknown* manufacturers, distributors, and/or suppliers of chain-and-ratchet components. Thus, Cottrell did not learn the specific identity of potential third-party defendants from the Brdars' complaint. Nevertheless, the complaint gave Cottrell notice that it might have a contribution claim against the manufacturer or distributor of the chain. This knowledge should have alerted a reasonable party of the need to begin an inquiry into the identity of potential third-party defendants.

It is true, as Cottrell points out, that it did not know for a fact that the chain involved was a replacement chain purchased by Cassens Transport until it learned of the existence of the chain in June 2003. However, Cottrell was well aware that there was at least a reasonable possibility that it was a replacement chain. As noted, a Cottrell representative testified that the company *expected* that its customers would purchase replacement chains for the trailers

19

over time. A simple inquiry could have led it to learn the identities of the distributors from whom Cassens Transport purchased its replacement chains long before August 2003, thus allowing a timely third-party complaint against these manufacturers and/or distributors. We do not believe that these uncontroverted facts lead to any conclusion other than that Cottrell was on inquiry notice once it was served with notice in July 2000. See *LaSalle National Bank*, 262 Ill. App. 3d at 903, 635 N.E.2d at 567. Therefore, we find that the court properly granted the third-party defendants' motions to dismiss.

E. *Forum Non Conveniens*

Cottrell argues that the court abused its discretion in denying its motion to dismiss on the basis of *forum non conveniens* so the case could instead be filed in Tennessee. Cottrell did not appeal the trial court's forum rulings pursuant to Supreme Court Rule 306(a)(2) (166 Ill. 2d R. 306(a)(2)). It now argues, nevertheless, that it is entitled to a reversal because it was prejudiced by the court's application of Illinois law. We disagree.

As Cottrell correctly notes, Illinois courts have considered challenges to forum decisions postverdict. See *Eads v. Consolidated R.R. Corp.*, 365 Ill. App. 3d 19, 26, 847 N.E.2d 601, 608 (2006); *Merritt v. Hopkins Goldenberg, P.C.*, 362 Ill. App. 3d 902, 912, 841 N.E.2d 1003, 1012 (2005); *Haight v. Aldridge Electric Co.*, 215 Ill. App. 3d 353, 357-59, 575 N.E.2d 243, 246-47 (1991). Thus, the decision to forego an interlocutory appeal of the forum issue does not act as a waiver. The fact that this case comes to us after a full trial is nevertheless extremely relevant. Each of the cases cited by Cottrell required a reversal on other grounds. Here, although we will remand for further proceedings that might result in a new trial limited to punitive damages, we need not remand for a new trial on all issues. This distinction is critical because the hallmark of the doctrine of *forum non conveniens* is convenience. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 173-74, 797 N.E.2d 687, 694 (2003) (explaining that the "central purpose" of *forum non conveniens* analysis is to

20

ensure a convenient trial). Were we to reverse the verdict on grounds of *forum non conveniens* alone, we would be requiring the parties to go through an otherwise unnecessary second trial in a different forum *after* going through a Madison County trial. To hold that a doctrine designed to promote convenience can lead to that result would be absurd.

Cottrell argues, however, that it was not only inconvenienced by the Madison County trial but also prejudiced by it as well. As noted, this argument focuses largely on Cottrell's contention that Tennessee law should have been applied. Cottrell asserts that a Tennessee court "undoubtedly" would have applied Tennessee law. However, Cottrell offers no basis for this bare allegation. The need to apply another state's law is often an important consideration in a decision to grant *forum non conveniens* motions. See *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 457 N.E.2d 417 (1983). It does not follow, however, that an Illinois court cannot or will not apply the law of another state when appropriate. The doctrine of *forum non conveniens* is not meant to be a means of ensuring that courts correctly determine choice-of-law issues. Moreover, Cottrell does not specifically appeal the trial court's choice-of-law ruling. Thus, it cannot argue that this ruling was incorrect in an effort to seek a new trial in Tennessee based on its speculative claim that a Tennessee court "undoubtedly" would have ruled differently with regards to the choice-of-law issue. We conclude that Cottrell is not entitled to a reversal on the ground of *forum non conveniens*.

## IV. THE BRDARS' CROSS-APPEAL

In their cross-appeal, the Brdars argue that (1) the court erred in refusing to submit their claim for punitive damages to the jury, (2) Vicky Brdar is entitled to a new trial on her claim for loss of consortium, and (3) the court abused its discretion in denying the Brdars' motion for sanctions relating to their costs in securing the rebuttal testimony of their expert witness, Linda Weseman.

21

## A. Punitive Damages

The Brdars first argue that the court erred in striking their claim for punitive damages and that they are entitled to a new trial limited to punitive damages. This is so, they contend, because the court applied the wrong law in denying their motion to reinstate their claim for punitive damages. Specifically, when it ruled on the Brdars' request, the court relied on section 2-1115.05 of the Code of Civil Procedure (735 ILCS 5/2-1115.05 (West 1996)). As previously discussed, when the court ruled on the motion, it quoted the statutory language nearly verbatim. The legislation enacting that statute was found to be unconstitutional in its entirety in *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 689 N.E.2d 1057 (1997).

The provision required plaintiffs to demonstrate by clear and convincing evidence that the defendant acted with evil motive or "a reckless and outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the rights and safety of others." 735 ILCS 5/2-1115.05(b) (West 1996). As the Brdars point out, when a law is declared unconstitutional, the law as it existed prior to the enactment of the unconstitutional statute is to be given effect (*Mermelstein v. Rothner*, 349 Ill. App. 3d 800, 802 n.1, 812 N.E.2d 461, 462 n.1 (2004) (citing *In re G.O.*, 191 Ill. 2d 37, 43, 727 N.E.2d 1003, 1007 (2000))). Case law predating the statute required only that plaintiffs demonstrate that the defendant's conduct was willful and wanton or outrageous or that the defendant acted with actual malice, fraud, deliberate violence, or gross negligence indicative of a wanton disregard for the rights of others. *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415-16, 563 N.E.2d 397, 402 (1990) (relying on Restatement (Second) of Torts §908, Comment *b*, at 464-65 (1979), and *Bresland v. Ideal Roller & Graphics Co.*, 150 Ill. App. 3d 445, 457, 501 N.E.2d 830, 839 (1986)); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359 (1978); *Kochan v. Owens-Corning Fiberglass Corp.*, 242 Ill. App. 3d 781, 793, 610 N.E.2d 683, 691 (1993). Most significantly, the clear-and-convincing-evidence standard is not applicable.

22

While we agree with the Brdars that the court applied the wrong standard in denying their request to submit their punitive-damages claim to the jury, we do not agree that they are automatically entitled to a new trial on that issue. Section 2-604.1 requires courts to determine whether there is a reasonable likelihood that a plaintiff will prevail on a claim for punitive damages before allowing that claim to go to the jury. 735 ILCS 5/2-604.1 (West 2002). It is not clear what conclusion the court would have reached had it applied the correct law. Thus, we remand with directions for the court to make the determination required of it by section 2-604.1. If the court concludes that there is a reasonable likelihood the Brdars will recover punitive damages, only then they will be entitled to a new trial limited to that issue.

## B. Vicky Brdar's Loss-of-Consortium Claim

The Brdars next argue that the verdict awarding no loss-of-consortium damages to Vicky Brdar was against the manifest weight of the evidence. They point out that her testimony regarding the effect of her husband's injuries on her life was uncontroverted, and they note that the verdict is inconsistent with the verdict of more than one million dollars in compensatory damages for Carl. They contend, therefore, that Vicky is entitled to a new trial on her claim. See *Johnson v. May*, 223 Ill. App. 3d 477, 488-89, 585 N.E.2d 224, 232 (1992); *Casey v. Pohlman*, 198 Ill. App. 3d 503, 509, 555 N.E.2d 1221, 1225 (1990); *Pease v. Ace Hardware Home Center of Round Lake No. 252c*, 147 Ill. App. 3d 546, 555-56, 498 N.E.2d 343, 349-50 (1986). We find that the Brdars are not entitled to the relief they seek.

Vicky Brdar testified briefly at the trial. She testified that, because of his injuries, Carl was no longer able to play golf, basketball, or volleyball, activities the Brdars regularly participated in prior to the accident. She also testified that he could no longer work on the couple's cars, fix things around the house, or help her work in the yard, as he had done previously. When asked what has made the greatest impact on her life, she said that the

23

hardest thing was seeing that he was in pain and being unable to do anything to alleviate it. As previously noted, this testimony was uncontroverted.

The jury in this case received verdict forms allowing it to designate damages to both Carl Brdar and Vicky Brdar. However, the Brdars did not tender any measure-of-damages instruction for the loss-of-consortium issue, and consequently, none was given by the court. Further, in closing arguments, counsel for the Brdars made only a passing reference to the damages suffered by Vicky. The jury was thus left with no guidance on the issue of the amount of damages, if any, that Vicky was entitled to as separate and distinct from her husband's compensatory damages. The jury cannot be expected to know the law without instruction. On appeal, a party is not entitled to relief for an error caused by the party's own failure to act. *Compton v. Ubilluz*, 353 Ill. App. 3d 863, 869, 819 N.E.2d 767, 774-75 (2004); *Vojas v. K mart Corp.*, 312 Ill. App. 3d 544, 549, 727 N.E.2d 397, 401 (2000).

The Brdars argue that these cases are distinguishable from the instant case because in each of those cases the appellant challenged an improper jury instruction, while here the Brdars contend only that the verdict was against the manifest weight of the evidence. We believe that this is a distinction without a difference. The principle that a party must object to an improper jury instruction and tender a proper one is meant to prevent a party from gaining an advantage by obtaining a reversal due to its own failure to act at the trial. *Compton*, 353 Ill. App. 3d at 869, 819 N.E.2d at 775. This principle is equally applicable here. Thus, Vicky Brdar is not entitled to a new trial on the issue of loss-of-consortium damages.

C. The Brdars' Motion for Costs

The Brdars next argue that the court abused its discretion in denying their motion for costs pursuant to Supreme Court Rule 219(c) (166 Ill. 2d R. 219(c)).

Under Rule 219(c), as a sanction, a court *may* award reasonable costs incurred as a

result of a party's failure to comply with discovery rules. 166 Ill. 2d R. 219(c). Whether to impose a discovery sanction is a matter within the discretion of the trial court, and we will not reverse the trial court's determination unless it abuses its discretion. Moreover, a court may only impose a sanction for violations that amount to unreasonable noncompliance. *Ruane v. Amore*, 287 Ill. App. 3d 465, 471, 677 N.E.2d 1369, 1374 (1997).

The Brdars contend that the record clearly demonstrates that Purswell's testimony regarding the 17.8-to-1 gear ratio was deliberately sprung at the last minute, while Cottrell contends that it was a response to Weseman's undisclosed testimony regarding the 30-to-1 gear ratio and thus could not have been disclosed in advance. In support of their contention, the Brdars allege that counsel for Cottrell falsely stated that the 17.8-to-1 gear ratio had been disclosed previously, a claim that was belied by Purswell's admission on cross-examination that he had arrived at that figure the previous evening after hearing Linda Weseman's testimony. We believe that the Brdars mischaracterize the statement at issue. Counsel for Cottrell asked Purswell to explain to the jury, step by step, the calculations he used in determining the gear ratio. Before he ever testified to a specific ratio, counsel for the Brdars interrupted to lodge the following objection: "Your Honor, I just asked [counsel for Cottrell] a question that[–]if this has ever been disclosed pursuant to Rule 213[,] and the answer is no." Counsel for Cottrell replied: "Yes he has, Your Honor. It is indicated in his report." The court overruled the objection, and Purswell continued his testimony.

Shortly thereafter, Purswell testified to the 17.8-to-1 ratio and testified about its implication on the force exerted on the chain if vehicles of various weights were tied down using the assembly. Counsel for the Brdars did not object. On cross-examination, Purswell testified that he had calculated the 17.8-to-1 ratio the previous evening after hearing Weseman's testimony regarding the 30-to-1 ratio and thinking that it "just couldn't be right."

Arguably, the Brdars waived their argument that the gear ratio itself was undisclosed

by failing to renew their objection at this point. Nevertheless, we do not think it is clear from this that Cottrell knew what Purswell was going to testify about concerning the gear ratio or that it acted so unreasonably or deliberately to require the court to impose sanctions. We find no abuse of discretion.

## V. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

SPOMER and STEWART[1], JJ., concur.

---

[1]Justice Hopkins participated in oral argument. Justice Stewart was later substituted on the panel and has read the briefs and listened to the audiotape of oral argument.

NO. 5-04-0415
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| CARL BRDAR and VICKY BRDAR, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees and Cross-Appellants, | ) | Madison County. |
| | ) | |
| v. | ) | |
| | ) | |
| COTTRELL, INC., | ) | |
| | ) | |
| Defendant-Appellant and Cross-Appellee, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CASSENS & SONS, INC.; CASSENS CORPORATION; | ) | No. 00-L-181 |
| UNKNOWN COMMERCIAL LESSORS IN THE | ) | |
| CASSENS FAMILY; UNKNOWN CHAIN AND | ) | |
| RATCHET COMPONENT DISTRIBUTORS AND | ) | |
| MANUFACTURERS; DAIMLERCHRYSLER | ) | |
| CORPORATION, f/k/a CHRYSLER CORPORATION; | ) | |
| and GENERAL MOTORS CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| ---------------------------------------------------------------------- | ) | |
| COTTRELL, INC., | ) | |
| | ) | |
| Third-Party Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| C.F. BENDER and VULCAN CHAIN CORPORATION, | ) | |
| | ) | |
| Third-Party Defendants-Appellees, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CASSENS TRANSPORT COMPANY, | ) | Honorable |
| | ) | A. A. Matoesian, |
| Third-Party Defendant. | ) | Judge, presiding. |

**Rule 23 Order Filed:**     February 13, 2007
**Motion to Publish Granted:**     March 27, 2007
**Opinion Filed**:     March 27, 2007

**Justices**:       Honorable Melissa A. Chapman, J.

Honorable Stephen L. Spomer, J., and
Honorable Bruce D. Stewart, J.,
Concur

---

**Attorneys for Appellants**

Karen L. Kendall, Heyl, Royster, Voelker & Allen, 124 S. W. Adams Street, Suite 600, Peoria, IL 61602; Alan J. Dixon, Bryan, Cave, LLP, One Metropolitan Square, 211 N. Broadway, Suite 3600, St. Louis, MO 63102-2750; Robert H. Shultz, Jr., 103 N. Main Street, Suite 100, Edwardsville, IL 62025

---

**Attorneys for Appellees**

Charles W. Armbruster III, The Lakin Law Firm, P.C., 300 Evans Avenue, P.O. Box 229, Wood River, IL 62095; Brian M. Wendler, Wendler Law, P.C., 900 Hillsboro, Suite 10, Edwardsville, IL 62025; Dawn Karnadulski O'Leary, Roth, Evans & Lading, P.C., 2421 Corporate Center Drive, Suite 200, Granite City, IL 62040; Martin M. Clay, Law Offices of Marc A. Lapp, 10825 Watson Road, Suite 120, Sunset Hills, MO 63127

---