NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220370-U

NO. 4-22-0370

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 27, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KENNETH W. HARTORY, | ) | Appeal from the |
|     Plaintiff, | ) | Circuit Court of |
|     v. | ) | Knox County |
| GLEN A. MENCHHOFER and CRUM TRUCKING, | ) | No. 18L18 |
| INC., | ) | |
|     Defendants/Third Party Plaintiffs- | ) | |
|     Appellants, | ) | |
|     v. | ) | |
| STEVEN BROWN, d/b/a STEVE'S SMITH AND | ) | Honorable |
| ALLEN GARAGE, | ) | James G. Baber, |
|     Third Party Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice DeArmond and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err by granting third-party defendant's motion to dismiss the third-party plaintiffs' claim for contribution on the basis that their complaint was untimely filed.

¶ 2    Plaintiff, Kenneth W. Hartory, brought an action against defendants—Glenn A. Menchhofer and Crum Trucking, Inc. (collectively defendants)—for negligence arising out of a motor vehicle accident and seeking damages for injuries he sustained in that accident. Later, defendants filed a third-party complaint for contribution against third-party defendant Steven Brown, d/b/a Steve's Smith and Allen Garage (Smith and Allen Garage), alleging Smith and Allen Garage negligently repaired plaintiff's vehicle prior to the accident and that those negligent repairs contributed to plaintiff's alleged damages. Smith and Allen Garage moved to dismiss the third-

party complaint on the basis that it was filed outside the applicable two-year statute of limitations. The trial court granted the motion and dismissed the third-party complaint with prejudice. Defendants appeal, arguing the court erred in determining when the two-year limitations period began to run and finding their contribution claim was time-barred. Alternatively, they contend the court erred in failing to equitably toll the two-year limitations period due to extraordinary circumstances that prevented defendants from learning the identity of the proper third-party defendant. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On October 28, 2017, plaintiff and defendant Menchhofer were involved in a motor vehicle collision on Interstate 74 in Peoria County, Illinois. At the time of the collision, plaintiff was driving his personal vehicle, a 2000 Buick Park Avenue, and defendant Menchhofer was driving a semi-tractor trailer owned by defendant Crum Trucking.

¶ 5        On December 7, 2017, engineering consultants retained by the parties—Semke Forensic and Unified Engineering, Inc.—inspected plaintiff's vehicle. Counsel for both plaintiff and defendants also attended the inspection. On January 5, 2018, Semke Forensic prepared a "Vehicle Accident Evaluation" report, which set forth the following findings of the inspection: (1) the damage to plaintiff's vehicle was "consistent with a rear collision by the tractor-trailer," (2) the driver's seat of plaintiff's vehicle "was displaced rearward" during the collision, (3) there were "welded connections" on the driver's seat and a "lower right weld failure" had occurred, (4) "the fractured lower right seat connection was caused by the rear-end collision," and (5) "the rear-end impact to the Park Avenue by the tractor-trailer caused the Park Avenue's driver's seat failure."

¶ 6        On May 1, 2018, plaintiff filed his complaint against defendants, alleging

Menchhofer negligently operated Crum Trucking's semi-tractor trailer, resulting in a rear-end collision with plaintiff's vehicle. Plaintiff asserted that as a result of the collision, he suffered "severe and permanent injury and damage—including *** paralysis." On August 22, 2018, counsel for defendants entered his appearance in the case, and, on August 24, 2018, he accepted service on their behalf. In October 2018, defendants filed their answer. They denied plaintiff's negligence allegations and also asserted affirmative defenses, including the following: "Plaintiff's claimed injuries and damages were proximately caused, in whole or in part, by [p]laintiff's own negligence or other intervening causes, including but not limited to the driver's seat failing."

¶ 7        In January 2019, defendants served interrogatories on plaintiff. Relevant to this appeal, they asked plaintiff (1) what date he purchased his vehicle; (2) whether he was provided with any repair history for the vehicle; (3) for a list of the names and addresses of each service garage that he had service his vehicle; and (4) for a list of all repairs made to his vehicle that he was aware of, along with the date the repairs were made and by whom the repairs were made. In February 2019, plaintiff responded. He asserted he did not recall the date he purchased his vehicle but asserted it was "probably about 2005." Plaintiff responded that he was not given a repair history for the vehicle and listed three garages, including Smith and Allen Garage, as having previously serviced his vehicle. Additionally, he maintained that he had not retained records of the repairs to his vehicle, and he did not recall the dates on which any repairs were made.

¶ 8        In November 2019, defendants served subpoenas on the service garages that plaintiff disclosed in his answers to their interrogatories. From Smith and Allen Garage, they specifically sought all documents and photographs related to any type of work performed on plaintiff's vehicle, "including, but not limited to, insurance claims, maintenance, repairs, welding, interior repairs[,] and body work." In February 2020, defendants filed a notice of service of

subpoena responses, stating they had received auto repair records from Smith and Allen Garage. Among the records they received was an invoice, dated April 20, 2015, that showed a "seat track" repair to plaintiff's vehicle.

¶ 9 The record shows that following the motor vehicle accident, plaintiff spent time in a rehabilitation center and was admitted to a long-term care facility. Correspondence between the parties' attorneys indicated defendants expressed a desire to depose plaintiff early in the case. In particular, on May 2, 2018, one day after plaintiff's complaint was filed, plaintiff's counsel wrote to defendants' counsel and stated as follows:

> "Please advise if you will voluntarily enter an appearance on behalf of the defendants. We have not had summons issued—in large part because of your indications that you want to proceed to depose [plaintiff] at an early stage to make some inquiries about a repair to his car seat which broke in the accident."

¶ 10 Over a year later, on August 15, 2019, plaintiff's counsel wrote a letter informing defendants that neuropsychological testing for plaintiff, which was recommended by plaintiff's doctor, was being arranged. Counsel further stated as follows: "Let us know if you want to depose [plaintiff]. My suggestion would be to wait until the neuropsychological exam is completed, but we leave that to your discretion." In a letter dated August 26, 2019, plaintiff's counsel informed defendants that plaintiff's neuropsychological evaluation was scheduled for January 9, 2020. On February 11, 2020, the trial court entered a case management conference order, requiring plaintiff to produce a neuropsychological evaluation report by April 30, 2020, and that plaintiff's deposition be completed by May 31, 2020.

¶ 11 On April 29, 2020, plaintiff's counsel wrote a letter, informing defendants of COVID-19 restrictions at plaintiff's nursing home, stating: "Because [plaintiff's] nursing home is

locked down due to COVID-19 restrictions, I don't think we'll be able to do his deposition in May. We will try and arrange it at the earliest possible date." On June 17, 2020, plaintiff's counsel again wrote to defendants, stating as follows:

> "Last week you indicated that you prefer an in-person discovery deposition of [plaintiff]. As I advised, I checked with the nursing home and they are unwilling to allow [plaintiff] to be released from the facility for any purpose other than to attend medical appointments. They did indicate that I may be present at the nursing home if we set up a video deposition—but that is subject to further review.
>
> My suggestion is we wait until July 15th. If state regulations haven't relaxed by that time, I can file a motion with the court requesting that it direct a video deposition of [plaintiff] and try and make those arrangements."

¶ 12        Ultimately, on September 10, 2020, plaintiff's deposition was taken via Zoom. During the deposition, plaintiff testified that the repair work Smith and Allen Garage performed on his vehicle prior to the accident included welding his broken driver's seat. On September 15, 2020, defendants filed a motion for leave to file a third-party complaint against Smith and Allen Garage, which was granted by an agreed order.

¶ 13        On October 1, 2020, defendants filed their third-party complaint for contribution against Smith and Allen Garage. They alleged that prior to the motor vehicle accident at issue, Smith and Allen Garage performed repairs on plaintiff's vehicle that included "welding the driver's seat frame *** on both the right and left side near the bottom of the driver's seat." They asserted plaintiff was injured in the motor vehicle accident "because the driver's seat frame in [p]laintiff's vehicle fractured at or near the locations where Smith and Allen Garage had previously welded the driver's seat ***." According to defendants, Smith and Allen Garage carelessly and

negligently welded plaintiff's broken driver's seat, failed to inspect or examine the repairs it performed, failed to supervise and inspect the work of the person or entity that welded the broken driver's seat, failed to inform plaintiff of safety hazards in his vehicle, failed "to follow vehicle manufacturer's procedures/OEM repair specifications" when performing its repairs, and "[made] representations and/or [failed] to warn" plaintiff regarding his vehicle. Defendants asserted that in the event they were found liable to plaintiff, "any recovery in that regard [would] be the direct and proximate result of the negligent acts and/or omissions of Smith and Allen Garage ***."

¶ 14 On November 24, 2020, Smith and Allen Garage filed its answer and affirmative defenses to the third-party complaint. It admitted that it had "welded the driver's seat frame in plaintiff's vehicle" but denied that it was negligent. It also asserted that defendants' third-party complaint should be dismissed with prejudice because it was not timely filed under section 13-204(b) of the Code of Civil Procedure (Code) (735 ILCS 5/13-204(b) (West 2018)).

¶ 15 On July 2, 2021, Smith and Allen Garage filed a motion to dismiss the third-party complaint pursuant to section 2-619(a)(5) of the Code (*id.* § 2-619(a)(5)), on the basis that it was untimely filed. It asserted that section 13-204(b) of the Code required the third-party complaint to be filed within two years after defendants (1) were served with process in the underlying action or (2) knew or should reasonably have known of the act or omission that gave rise to their contribution claim. Smith and Allen Garage maintained that defendants learned of information pertaining to the basis of their contribution claim at the time of the December 2017 inspection of plaintiff's vehicle, *i.e.*, that plaintiff's injuries "may have been wrongfully caused by a seat that collapsed due to a poor previous weld of the seat frame." It noted the inspection was attended by counsel for defendants and their retained engineering consultant and that the inspection revealed that plaintiff's driver's seat "frame had been previously welded and had arguably fractured due to

the force of the impact" from the motor vehicle accident.

¶ 16        According to Smith and Allen Garage, the statutory limitations period for the filing of defendants' third-party complaint "expired by August 22, 2020," two years after defendants' counsel appeared in the underlying case, and the later-expiring period of the two relevant time periods set forth in section 13-204(b). It reasoned that because the third-party complaint was not filed until October 1, 2020, it was untimely and should be dismissed with prejudice. Smith and Allen Garage attached various documents to their motion to dismiss, including the Vehicle Accident Evaluation report, correspondence between the parties' attorneys, and plaintiff's responses to defendants' interrogatories.

¶ 17        On August 24, 2021, after the filing of Smith and Allen Garage's motion to dismiss, the discovery deposition of its technician, Clint Smock, was taken. Through Smock's testimony, defendants learned that Smith and Allen Garage welded plaintiff's driver's seat frame but then, in April 2015, also replaced the driver's seat with one from a salvage yard. His testimony indicated the frame of the replacement seat had also been welded, although not by Smock or Smith and Allen Garage. According to Smock, the April 20, 2015, invoice it provided to defendants in response to their subpoena represented the replacement of plaintiff's driver's seat.

¶ 18        In October 2021, defendants filed a "resistance" to Smith and Allen Garage's motion to dismiss. They argued that the issue of "discovery of an injury" under section 13-204(b) of the Code was a question of fact that should be decided by a jury rather than in a motion to dismiss. Further, they suggested that the two-year limitations period did not begin to run until the date of plaintiff's deposition in September 2020. Defendants argued as follows:

> "The mere fact that Defendants were aware [p]laintiff's driver's seat frame likely
>
> fractured during the underlying collision due to poor welding does not reveal the

identity of any individual or company that may have performed maintenance or repair work on [p]laintiff's driver's seat. Defendants had reason to believe that the broken driver's seat may have contributed to [p]laintiff's alleged injuries on December 7, 2017, but had no way of knowing Smith and Allen Garage's involvement with Plaintiff's alleged injuries on that date."

Defendants maintained that despite exercising due diligence, they "were unable to obtain any documents in discovery indicating Smith and Allen Garage performed welds on [p]laintiff's driver's seat or was otherwise involved in [p]laintiff's alleged injuries." They noted that neither plaintiff's answers to their interrogatories nor Smith and Allen Garage's response to their subpoena disclosed the performance of any welding work. According to defendants, "it wasn't until [p]laintiff's deposition on September 10, 2020[,] that [d]efendants could begin to identify a cause of action against Smith and Allen Garage."

¶ 19　　　　　Defendants also claimed that factors "beyond [their] control resulted in Plaintiff's deposition" not being taken until September 2020. In particular, they noted that at the suggestion of plaintiff's counsel, they agreed to wait until his neuropsychological exam was completed before deposing him. Defendants further argued that plaintiff's deposition was postponed due to the pandemic and COVID-19 lockdown restrictions. They maintained that "[i]f the COVID-19 pandemic had not occurred, [p]laintiff's deposition would have been completed prior to May 31, 2020, as the [trial court] originally ordered." Defendants asserted that Smith and Allen Garage's "poor record keeping" and the "global pandemic" delayed them from discovering Smith and Allen Garage's involvement with plaintiff's alleged injuries.

¶ 20　　　　　Defendants also pointed to Smock's deposition testimony, which they argued showed their contribution claim was not based on the quality of the welds Smith and Allen Garage

performed on plaintiff's driver's seat frame, but on Smith and Allen Garage's failure to properly inspect the replacement seat before installing it in plaintiff's vehicle. Defendants asserted they "did not and could not discover Smith and Allen Garage's actual involvement with Plaintiff's alleged injuries until taking *** Smock's deposition." Defendants attached various documents to their "resistance," including plaintiff's interrogatory answers, the depositions of both plaintiff and Smock, correspondence between the parties, and the April 2015 invoice from Smith and Allen Garage.

¶ 21 Following a hearing a hearing in November 2021, the trial court entered a written order, granting Smith and Allen's motion to dismiss with prejudice. It found the relevant facts were not in dispute, and only one conclusion could be drawn from those undisputed facts, *i.e.*, "that the statute of limitations for [defendants'] third[-]party claim expired on August 22, 2020, which [was] [two] years after [defendants] entered [their] appearance" in the case. In particular, the court found that the December 2017 inspection, in which defendants participated, revealed that plaintiff's driver's seat frame had been welded and that the weld failed during the accident. It rejected any argument that defendants had to know the identity of the person or entity "who committed a wrongful act concerning the failed weld" before the limitations period could begin running. The court further stated as follows:

> "[Defendants'] argument that the statute of limitations didn't start running because the invoices from Smith and Allen Garage were unclear *** and that [plaintiff] was unable to provide information about the work done misses the point. The question is whether the statute of limitations started to run when the failed weld was discovered. If the statute began to run when the failed weld was discovered, there does not appear to be an exception to the limitation period for reasonable

attempts to find out who was potentially the negligent party as the discovery rule has to do with discovering the potential cause of action, not who the cause of action is against. *** [Defendants] either knew or should have known on or shortly after December 7, 2017, that [plaintiff] was injured and that the weld on the seat had broken."

In its order, the court also found there was no just reason for delaying either enforcement or appeal of its order.

¶ 22 In February 2022, defendants filed a motion to reconsider the trial court's dismissal of their third-party complaint. Again, defendants argued that the two-year limitations period did not begin until the date of plaintiff's deposition. They asserted it was not until that September 2020 deposition that they had reasonable knowledge that an injury was "wrongfully caused." Further, they asserted that "the identity of a defendant is a key in establishing reasonable knowledge of [a] wrongful cause." Relevant to this appeal, defendants also argued that plaintiff's poor health and the pandemic "substantially delayed" their ability to take his deposition and learn of Smith and Allen Garage's "potential involvement and culpability."

¶ 23 Following a hearing on defendants' motion to reconsider in March 2022, the trial court entered a written order, denying the motion.

¶ 24 This appeal followed.

¶ 25                                   II. ANALYSIS

¶ 26 On appeal, defendants challenge the trial court's grant of Smith and Allen Garage's motion to dismiss. They contend the court erred by finding the two-year limitations period in section 13-204(b) of the Code began to run in August 2018 and, as a result, their third-party complaint, filed in October 2020, was untimely. Defendants initially argue the motion to dismiss

presented a question of fact as to when they knew or reasonably should have known that an injury was wrongfully caused and, as a result, the question could not be resolved as a matter of law in a motion to dismiss. Alternatively, defendants contend the record shows the relevant limitations period did not begin to run until the date of plaintiff's deposition in September 2020, when they first learned that Smith and Allen Garage welded plaintiff's broken driver's seat frame while plaintiff owned the vehicle. Finally, defendants also argue that, assuming the two-year limitations period expired in August 2020, as the court found, the period should have been equitably tolled due to extraordinary circumstances that prevented them from learning the identity of the proper third-party defendant.

¶ 27                         A. Section 2-619(a)(5) Motion to Dismiss

¶ 28           When considering a section 2-619 motion to dismiss, "a court accepts all well-pleaded facts in the complaint as true and will grant the motion when it appears that no set of facts can be proved that would allow the plaintiff to recover." *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 11, 104 N.E.3d 1090. Under section 2-619(a)(5) of the Code, an action is subject to involuntary dismissal if it "was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2018). The trial court's grant of such a motion is subject to *de novo* review. *Lawler*, 2017 IL 120745, ¶ 11.

¶ 29                         B. Section 14-204(b) and the Discovery Rule

¶ 30           Section 14-204(b) of the Code (735 ILCS 5/13-204(b) (West 2018)) sets forth the relevant limitations period for contribution claims, providing as follows:

> "In instances where an underlying action has been filed by a claimant, no action for
>
> contribution or indemnity may be commenced more than [two] years after the party
>
> seeking contribution or indemnity has been served with process in the underlying

action or more than [two] years from the time the party, or his or her privy, knew or should reasonably have known of an act or omission giving rise to the action for contribution or indemnity, whichever period expires later." *Id.*

Through its plain language, section 14-204(b) incorporates the discovery rule under which "the statute of limitations begins to run once a party has sufficient knowledge to put a reasonable party on inquiry to determine whether a cause of action exists." *Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690, 705, 867 N.E.2d 1085, 1099-1100 (2007).

¶ 31        "The effect of the discovery rule is to postpone the starting of the period of limitations until the injured party knows or should have known of his injury." *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 414, 430 N.E.2d 976, 979 (1981). "[T]he statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Id.* at 415.

¶ 32        "Knowledge that an injury has been 'wrongfully caused' does not mean knowledge of a specific defendant's negligent conduct." *Wells v. Travis*, 284 Ill. App. 3d 282, 287, 672 N.E.2d 789, 793 (1996). Also, use of the term "wrongfully caused" does not mean that a party must have knowledge of negligent conduct or the existence of a cause of action before the limitations period begins to run. *Knox College*, 88 Ill. 2d at 416 (stating "wrongfully caused" was a general or generic term, not a term of art, and its use "does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action"); see also *Parks v. Kownacki*, 193 Ill. 2d 164, 176, 737 N.E.2d 287, 294 (2000) ("The limitations period begins running even if the plaintiff does not know that the misconduct was actionable."). Instead, the limitations period starts under the discovery rule when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is

- 12 -

involved." *Knox College*, 88 Ill. 2d at 416.

¶ 33    As defendants point out, the point at which a party knows or reasonably should know of both an injury and that it was wrongfully caused is generally a question of fact. *Id.* at 416-17. However, "[w]here it is apparent from the undisputed facts *** that only one conclusion can be drawn, the question becomes one for the court." *Witherell v. Weimer*, 85 Ill. 2d 146, 156, 421 N.E.2d 869, 874 (1981); see also *Brdar*, 372 Ill. App. 3d at 706 ("A contribution claim can only be dismissed by a court before trial if it is apparent from undisputed facts that the third-party plaintiff reasonably should have known that it had a contribution claim more than two years before filing its third-party complaint.").

¶ 34    Here, the facts are undisputed and lead to only a single conclusion—that in December 2017, defendants had knowledge of both an injury and that it was wrongfully caused. The record shows that the motor vehicle accident at issue occurred in October 2017, resulting in injury to plaintiff of which defendants were aware. In December 2017, plaintiff's vehicle was inspected in the presence of defendants' counsel and their engineering consultant. The inspection revealed a defect in the driver's seat of plaintiff's vehicle—a "weld failure"—that occurred during the rear-end collision. In their brief on appeal, defendants acknowledge that they "knew that a weld on the lower right seat connection of the driver's seat frame likely fractured during the accident *** by virtue of their counsel's presence at the December 7, 2017[,] vehicle inspection." It is at that point, under the discovery rule, that defendants had sufficient information as to both the "injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct [was] involved." *Knox College*, 88 Ill. 2d at 416.

¶ 35    Notably, defendants' discovery of the act or omission giving rise to their contribution claim occurred before both the filing of plaintiff's underlying cause of action in May

2018 and their appearance and acceptance of service in the case in August 2018. Because section 13-204(b) provides that an action for contribution must be filed within two years of when either the party seeking contribution has been served with process or the discovery date, "whichever period expires later," the trial court was correct in finding the limitations period commenced to run in August 2018 and that it expired in August 2020. Accordingly, defendants' third-party complaint, which was not filed until October 2020, was untimely.

¶ 36    Defendants argue that although in December 2017, they knew that a weld on the driver's seat "likely fractured during the accident," they lacked any knowledge at that time of the "nature of the weld," specifically "that the fractured weld was performed during a repair of the driver's seat frame while [p]laintiff owned the vehicle." They contend that the December 2017 "vehicle inspection revealed two *** potential sources," aside from the collision itself, that contributed to plaintiff's injuries: (1) an original weld on the driver's seat that had not been repaired, which they argue was not actionable or (2) a weld performed during a repair of the driver's seat. Defendants maintain that, as a result of those competing possibilities, they lacked knowledge of "an actionable wrongful cause."

¶ 37    Defendants assert the actual discovery date for their contribution claim must be viewed as the date of plaintiff's September 2020 deposition, when they first learned that Smith and Allen Garage welded plaintiff's broken driver's seat frame while plaintiff owned the vehicle. According to defendant, "[l]earning that a repair shop welded the driver's seat was the triggering event for the statute of limitations because that is when [they] learned [p]laintiff's injuries may have been caused by a secondary cause for which there [was] a *viable cause of action*." (Emphasis added.)

¶ 38    Ultimately, defendants' argument amounts to a claim that knowledge of a

"wrongful cause" requires knowledge of either negligent conduct or the existence of a cause of action. However, as set forth above, this interpretation of the discovery rule goes too far and has been rejected. See *Knox College*, 88 Ill. 2d at 416 ("The term 'wrongfully caused,' *** must be viewed as a general or generic term, and not a term of art" and its use "does not connote knowledge of negligent conduct or knowledge of the existence of a cause of action"); *Witherell*, 85 Ill. 2d at 156 ("The statute starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. At that point the burden is upon the injured person to inquire further as to the existence of a cause of action."); *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 171, 421 N.E.2d 864, 868 (1981) ("[W]hen a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed."). As supreme court authority makes clear, a party does not have to have knowledge of a viable cause of action before the limitations period commences to run under the discovery rule. Rather, the critical inquiry for purposes of the discovery rule is when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine *whether* actionable conduct is involved." (Emphasis added.) *Knox College*, 88 Ill. 2d at 416.

¶ 39        The record in this case shows defendants had knowledge in December 2017 of both the injury to plaintiff and the defect in his driver's seat. Notice of those facts was sufficient to require a reasonable person to investigate further and inquire whether a viable cause of action existed. Here, defendants began making such inquiries, seeking to determine what repairs had been made to the vehicle and the source of the weld. In fact, the record shows that at least as early as April 2018, the subject of repairs to the car's seat was being discussed by the parties. In

correspondence dated April 19, 2018, plaintiff's counsel wrote to counsel for defendants: "Since you are requesting an immediate deposition and follow-up *regarding the repair of the car seat*, it would appear that putting the matter in suit can just as well be done now as later." (Emphasis added.) Under the circumstances presented, defendants' claim that the limitations period did not begin until September 10, 2020, lacks merit.

¶ 40                                     C. Equitable Tolling

¶ 41           As stated, defendants also argue that even if the trial court was correct in finding that the two-year limitations period began to run in August 2018 and expired in August 2020, it should be equitably tolled to the date they filed their third-party complaint. Specifically, they contend that despite exercising due diligence, extraordinary circumstances prevented them from learning the identity of the proper third-party defendant. In particular, defendants point to "an irredeemable lack of information in responses to their interrogatories and subpoenas, coupled with the COVID-19 pandemic which delayed [p]laintiff's deposition until September 10, 2020."

¶ 42           "Generally, the doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where because of disability, irremediable lack of information, or other circumstances beyond his control, the plaintiff cannot reasonably be expected to file suit on time." (Internal quotation marks omitted.) *Williams v. Board of Review*, 241 Ill. 2d 352, 360, 948 N.E.2d 561, 567 (2011). "Equitable tolling *** may be appropriate if the defendant has actively misled the plaintiff, *** if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Clay v. Kuhl*, 189 Ill. 2d 603, 614, 727 N.E.2d 217, 223 (2000). The doctrine may be applied to postpone the deadline for filing an action "if a plaintiff cannot discover his injurer's identity within the statutory period despite the exercise of reasonable diligence." *Griffin v.*

*Willoughby*, 369 Ill. App. 3d 405, 416, 867 N.E.2d 1007, 1016 (2006).

¶ 43     Smith and Allen Garage argues that defendants have forfeited their equitable tolling argument by not raising it below. Arguments that a party fails to raise in the trial court are forfeited and may not be raised on appeal. *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 76, 186 N.E.3d 378. The purpose of the forfeiture doctrine "is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14, 43 N.E.3d 1005.

¶ 44     The record shows that the primary focus of defendants' arguments before the trial court was that the two-year limitations period began to run in September 2020, when plaintiff's deposition was conducted, and they then learned that Smith and Allen Garage had performed repairs on plaintiff's driver's seat. Although their arguments included assertions that they had acted diligently in pursuing their contribution claim and that plaintiff's deposition had been delayed by circumstances beyond their control, including plaintiff's medical condition and the pandemic, defendants did not plainly assert a claim for equitable tolling of the limitations period. Notably, when the issue of tolling was brought up by the court during the hearing on the motion to dismiss, defendants' counsel argued only that tolling should occur on the basis of "concealment":

> "THE COURT: What's the reason for tolling the Statute of Limitations generally?
>
> MR. TENNEY [(DEFENDANTS' ATTORNEY)]: According to their case, *** it's fraud, concealment, or other similar events. And this is concealment."

¶ 45     Additionally, the only reference to "equitable considerations" by defendants when

presenting argument to the court was based upon the contention that defendants had been unable to determine the "actual nature" of their claim until they took Smock's deposition. Specifically, defendants' counsel asserted as follows:

> "Here the limitations period does not impact your Honor's subject matter jurisdiction but rather authority to hear a claim; and, therefore, equitable consideration should be brought in, *i.e.*, the documentation that we received that even [p]laintiff himself was unable to tell us what work was performed. And then we ultimately had to take *** Smock's deposition to finally figure out this is our actual nature of our claim against Smith and Allen Garage."

¶ 46     In this instance, equitable tolling was not addressed by the trial court, and as a result of defendants' specific arguments, it was not an argument the court even understood defendants to be making. As a result, we agree that the issue has been forfeited.

¶ 47     Moreover, even setting the issue of forfeiture aside, we would find no merit to defendants' claim as the record does not reflect the existence of extraordinary circumstances. After learning of the weld failure and within the two-year limitations period, defendants obtained information from plaintiff that Smith and Allen Garage performed repairs on plaintiff's vehicle. They also received information from Smith and Allen Garage that it made repairs connected with a seat in plaintiff's vehicle in April 2015. Such circumstances could arguably create notice of a need for further inquiry into that specific entity. The disclosure of such information also suggests defendants did not suffer "an irredeemable lack of information" in response to their diligent inquiries.

¶ 48     Further, contrary to defendants' contentions on appeal, the record does not support their contentions that equitable tolling should be applied because of plaintiff's "inability to sit for

a deposition before the pandemic" and "restrictions that prevented the deposition during the COVID-19 pandemic." First, nothing in the record establishes that plaintiff was unable to be deposed prior to the pandemic. In August 2019, plaintiff's counsel suggested that plaintiff's deposition not occur until after plaintiff's neuropsychological exam was completed, but ultimately left the matter to defendants' "discretion." Defendants point to nothing else in the record that indicates there was anything about plaintiff's condition or his need for medical care that made taking his deposition impossible.

¶ 49    Second, the record does not reflect that COVID-19 restrictions prevented plaintiff's deposition from occurring until September 2020. Rather, correspondence between the parties suggests the deposition did not occur sooner than September 2020, and prior to the expiration of the statute of limitations in August 2020, because defendants "prefer[red] an in-person discovery deposition" as opposed to a remote one. Nothing in the record supports a finding that the deposition could not have been taken remotely before the expiration of the limitations period in August 2020, and the same correspondence even suggested the possibility of "a video deposition." Significantly, when plaintiff's deposition eventually occurred, it was done via Zoom and only a short time after the limitations period expired.

¶ 50    Here, not only was the trial court not asked to equitably toll the relevant limitations period, the record does not provide a basis for equitable tolling. Accordingly, we find no error occurred below as alleged by defendants.

¶ 51                              III. CONCLUSION

¶ 52    For the reasons stated, we affirm the trial court's judgment.

¶ 53    Affirmed.