2024 IL App (2d) 240188-U
No. 2-24-0188
Order filed December 9, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LETICIA NOWICKI and LAWRENCE WALTER NOWICKI, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 16-L-460 |
| | ) | |
| OTIS ELEVATOR COMPANY, | ) | |
| | ) | |
| Defendant and Third-Party Plaintiff-Appellant | ) ) | |
| | ) | Honorable |
| (Advocate Sherman Hospital, Third-Party | ) | John G. Dalton, |
| Defendant-Appellee). | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court erred in dismissing as untimely a contribution claim by defendant elevator company against the hospital where an elevator made and installed by defendant precipitously dropped five floors and injured plaintiff. There was a question of fact as to when defendant knew or should have known that the hospital's negligence contributed to the elevator's malfunction.

¶ 2    Plaintiffs, Leticia Nowicki and Lawrence Walter Nowicki, filed a complaint against

defendant, Otis Elevator Company (Otis), after Leticia was injured while riding in an elevator in a

facility operated by Advocate Sherman Hospital (Advocate). Otis manufactured and maintained the elevator. Otis filed a third-party complaint for contribution (see 740 ILCS 100/1 *et seq.* (West 2022)) against Advocate, alleging that the elevator incident was caused at least in part by Advocate's negligent maintenance of the elevator and/or Advocate's facility. Advocate moved to dismiss the third-party complaint (see 735 ILCS 5/2-619(a)(5) (West 2022)) as barred by the two-year limitation period for contribution actions (see *id.* § 13-204(b)). The trial court granted the motion. Otis appeals (see Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)). We reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4      On September 14, 2016, plaintiffs filed a four-count complaint against Otis, alleging the following facts. On August 21, 2015, Leticia, an Advocate employee, entered an elevator car on the fifth floor of Advocate's facility on Randall Road in Elgin (the facility). Otis had designed, manufactured, and installed the elevator. While the elevator car was still on the fifth floor, the car shook, suddenly and violently moved downward, and abruptly stopped at approximately the first floor. Leticia suffered injuries, economic loss, and medical expenses.

¶ 5      Count I of the complaint sought recovery for Leticia based on strict product liability. It alleged that Otis failed to design the elevator with safety systems adequate to regulate the speed of the car's descent and shut down the elevator system when it malfunctioned. Count II sought recovery, on the same theory, for Lawrence's loss of consortium. Count III sought recovery for Leticia based on Otis's negligence, *e.g.*, (1) its failure to install, program, or maintain the elevator system so that it would not suddenly decelerate or descend; and (2) its failure to warn passengers about sudden drops. Count IV sought recovery, on the same theory, for Lawrence's loss of consortium.

¶ 6     Otis was served with the complaint on the day it was filed. On October 12, 2016, Otis filed its appearance. On February 27, 2017, Otis filed its answer. On June 1, 2023, Otis moved for leave to file a third-party complaint against Advocate. Otis's motion stated that, on or about September 1, 2015, Leticia filed a workers' compensation claim against Advocate, which was still pending. Otis also stated that Joanna Barclay, M.D., testified in a deposition that Leticia had attributed the elevator accident to a power surge. Otis argued that its third-party complaint would "facilitate an equitable determination of responsibility for the alleged occurrence."

¶ 7     On June 22, 2023, the trial court granted Otis leave to file its third-party complaint against Advocate. The next day, Otis filed its complaint, alleging that Advocate was responsible, "directly or indirectly," for operating, maintaining, and servicing the facility's elevators. According to Otis, Advocate breached its duty of care to Leticia by failing to (1) take proper steps to monitor and maintain power to the elevator in question, (2) prevent or correct power surges in the facility, (3) document power surges or report them to Otis and others, and (4) make recommended upgrades and modifications to the facility's elevators. Otis attached the depositions of Barclay and Kevin Pirtle.

¶ 8     On July 29, 2022, Pirtle testified in his deposition as follows. He had been employed at Advocate since 2012 as a preventive maintenance mechanic. From 2012 to 2015 or 2016, he worked at both the facility and Advocate's other campus in downtown Elgin. Pirtle never performed maintenance on the facility's elevators, as that was Otis's prerogative. Pirtle did investigate calls and complaints about the elevators' functioning. He did not recall whether he was on the job on August 21, 2015.

¶ 9     Pirtle testified that, though he received various complaints about elevator performance in the facility, he was never informed about "people getting into the elevators and pressing a button

and then being taken to *** floors other than the ones that they had pressed and going to multiple different levels[.]" He had never experienced, at either Elgin campus, "a situation where there was a power surge that burnt out any hospital mechanical device[.]" He did not know whether, in 2015, the facility had "any kind of protection *** against unequal levels of electrical power being fed into the [facility] either with a surge or a lack of surge[.]" He did recall power surges and losses at the facility—specifically, "[m]aybe a dozen, couple dozen" surges. He did not know how many surges occurred in 2015. A surge would cause the hallway lights to "flicker." Pirtle did not know whether power surges or losses had ever prevented elevators from running.

¶ 10    On February 27, 2023, Barclay testified in her deposition as follows. She operated a pain-management clinic and had an office in the facility. Between January 19, 2016, and March 5, 2016, Barclay treated Leticia. On January 19, 2016, Barclay took a patient history from Leticia, who reported in part that she "had an incident on the elevator on August 21, 2015, when the elevator had a power surge and had five floors going down with loss of control." Barclay affirmed that she did not independently investigate or analyze the elevator incident and that "the information *** in the medical record in [Leticia's] patient history regarding the elevator having a power surge *** [was] coming from [Leticia]." Plaintiffs' counsel inquired further about the elevator incident that Leticia reported to Barclay:

> "BY MR. MURPHY [(PLAINTIFFS' COUNSEL)]:
>
> Q. ***
>
> You know, the history that you had read off had indicated that there was an elevator accident and a power surge. Was that information commonly known about the people who worked in the hospital as explanation [*sic*] for what happened to [Leticia]?
>
> A. No.

MR. BARKLEY [(OTIS'S COUNSEL)]: Object to form.

BY THE WITNESS:

A. The only place I heard it was from [Leticia]."

¶ 11    Barclay testified that she routinely used the facility's elevators but never personally experienced an elevator malfunction.

¶ 12    On July 18, 2023, Advocate moved under section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2022)) to dismiss Otis's third-party complaint as barred by section 13-204(b) of the Code (*id.* § 13-204(b)). Section 13-204(b) states in relevant part that

> "no action for contribution *** may be commenced more than 2 years after the party seeking contribution *** has been served with process in the underlying action or more than 2 years from the time the party, *** knew or should reasonably have known of an act or omission giving rise to the action for contribution ***, whichever period expires later."
> *Id.*

¶ 13    Advocate noted that Otis was served with process on September 14, 2016, nearly seven years before it sought to file the contribution action. According to Advocate, Otis's emphasis on when it became aware that a power surge might have caused the accident was a "red herring." Rather, even at "the inception of [the underlying] lawsuit," Otis had all information necessary to file its contribution claim; specifically, it knew that (1) Leticia allegedly suffered her injury due to the malfunction of an elevator that was manufactured, designed, and installed by Otis; (2) Advocate was "involve[d] in the incident" because the elevator was used in its facility; and (3) Leticia had filed a workers' compensation claim against Advocate in September 2015. Advocate concluded that Otis's contribution claim was untimely.

¶ 14    Otis responded to Advocate's motion to dismiss as follows. The limitation period started only when Otis acquired sufficient information to be on notice that Advocate caused Leticia's injuries, at least in part. Otis contended that it was put on notice no earlier than when Pirtle testified at his 2022 deposition that, since 2012, there were "[m]aybe a dozen, couple dozen" power surges at the facility. Until Pirtle's deposition, nothing suggested that an isolated event—Leticia's accident—was caused by Advocate's negligence; there easily could have been other causes.

¶ 15    Otis's response attached the August 24, 2022, deposition of Kristy Sheehan.[1] Sheehan testified as follows. She had worked for Advocate from 1997 to 2020. She became a nurse there in 1999 and, in August 2015, was the assistant clinical manager of the emergency room. In the latter role, she was Leticia's supervisor. Sheehan was working on the day of Leticia's accident. However, Sheehan did not investigate the accident and had no idea whether any elevator malfunctioned on August 21, 2015. She could not recall any power surges or outages occurring that day. She typically became aware of power surges or outages when the emergency room lights "flicker[ed]"—the lights would go out, but those powered by generators would immediately come back on. Asked how often power surges or outages occurred at the facility, she testified, "More than I can recall. I'm going to be honest; it did happen a lot." Some were planned outages for

---

[1]Advocate argues that we may not consider Sheehan's deposition because Otis "never raised or relied on [Sheehan's] testimony at the trial court level." Advocate's reading of the trial court record is flatly incorrect. Otis's response to Advocate's motion to dismiss attaches, references, and substantively incorporates Sheehan's deposition. Even if Otis had attached the deposition without expressly relying on it, we know of no authority that would prevent us from considering it. Thus, we consider Sheehan's deposition, although it is not crucial to our analysis.

maintenance purposes, and these occurred once a month or less. Sheehan said she had no "knowledge regarding whether there was a power outage or power surge or electrical interruption with regard to [Leticia][.]" Sheehan recalled occasional elevator problems such as stuck doors or rough stops. However, she could not recall being in an elevator "that went to a floor that [she] didn't direct it to[.]" Nor could she recall ever being in an elevator during a power surge or outage.

¶ 16    Otis's response also attached Leticia's April 5, 2019, deposition. Leticia testified as follows. She had been employed at Advocate for 16 years and worked at the facility since it opened in 2000 or 2001. She had regularly used the facility's elevators and had no "incidents" with them before August 21, 2015. On that date, she dropped a patient off on the fifth floor, then entered an elevator and pushed the button for the second floor. Shortly after the car started to move, she felt it drop very fast "and then all of a sudden it was a crash." The examination continued:

"Q. Do you have any idea what caused any alleged problem with the operation of the elevator on the day of the incident?

A. No.

Q. Do you know what 'happened,' if I can put that in quotes? Do you have any idea what 'happened' to the elevator?

A. No.

Q. And do you have any idea why it happened?

A. No."

¶ 17    Later, Otis's counsel asked:

"Q. ***

Specifically, after the accident, on January 9th of 2016 do you ever recall telling Dr. Barclay that you were involved in an elevator accident that had a power surge, and you had a five-floor straight-down loss of control?

\*\*\*

A. No."

¶ 18    Leticia was also asked about the postaccident treatment she received from several doctors (excluding Barclay) and about her answers to interrogatories from Otis:

"Q. So it would be fair to say you don't recall ever telling any of the doctors \*\*\*or their nurses that [the] elevator had a power surge and had a five-floor straight-down loss of control?

A. Correct.

\*\*\*

Q. So in your [a]nswers to [i]nterrogatories when you're asked about the cause of the accident, do you recall what you put, if anything?

A. I had an elevator accident, and that's it."

¶ 19    In its reply in support of its motion to dismiss, Advocate characterized Barclay's February 2023 deposition testimony as "relying on a preexisting medical record which documented how [Leticia] explained that a power surge may have been at issue on the date of the incident." Advocate claimed that, "while [it] was not involved in [the] matter during initial discovery, it [was] understood that the [m]edical [r]ecord was created on March 3, 2016." Further, Advocate alleged "on information and belief" that, in January 2020, Otis participated in an investigation of the elevator at issue, during which "extensive tests were performed including tests on the unit's electrical system." Advocate admitted that it did not know the tests' results.

¶ 20    Advocate argued, as before, that the limitation period for Otis's contribution claim commenced "the moment [Otis] was served in 2016" with a lawsuit alleging an elevator malfunction in the facility. Advocate also noted that 2016 was the year Leticia reported in her medical history for Barclay that the elevator incident was due to a power surge. Advocate alternatively argued that the limitation period commenced in 2019 (when, at Leticia's deposition, Otis's counsel implicitly referenced the medical record) or 2020 (when Otis participated in a maintenance inspection of the elevator).

¶ 21    The trial court granted Advocate's motion to dismiss, explaining that, by April 5, 2019, when Leticia gave her deposition, Otis was on notice that "alleged power surges at Advocate's facilities may have caused the elevator malfunction ***." "Indeed, questions asked by [Otis's] counsel ma[d]e clear that [Otis] was aware [that] [Leticia's] medical records contained reference to the alleged surges and, furthermore, that [Otis] must have known about the medical records before (if not well-before) the April 5, 2019 deposition." Thus, according to the court, the two years for filing a contribution claim against Advocate commenced at least by April 5, 2019, and, therefore, expired at least by April 5, 2021—well before Otis filed its third-party complaint. Accordingly, the court dismissed the complaint. Thereafter, the court denied Otis's motion to reconsider and made the dismissal immediately appealable. Otis then filed a timely appeal.

¶ 22                                    II. ANALYSIS

¶ 23                            A. Deficiencies in Otis's Briefs

¶ 24    Before we turn to the merits of Otis's appeal, we must note that its opening and reply briefs violate our supreme court's rules on appellate briefing. An opening brief must contain "[a]n introductory *paragraph* stating (i) the nature of the action and of the judgment appealed from and whether the judgment is based upon the verdict of a jury, and (ii) whether any question is raised

on the pleadings ***." (Emphasis added.) Ill. S. Ct. R. 341(h)(2) (eff. Oct. 1, 2020). The opening brief must also have a "Statement of Facts, which shall contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal ***." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Finally, an appellant must base any claims of error on facts drawn from the record; arguments based on nonrecord facts will not be considered. See *Paluch v. United Parcel Service, Inc.*, 2014 IL App (1st) 130621, ¶ 23.

¶ 25     Otis's "Nature of the Action" is four pages of argument. This is improper. See *Slater v. Illinois Labor Relations Board, Local Panel*, 2019 IL App (1st) 181007, ¶ 10. Worse, it is replete with factual assertions that lack any basis in the record, including statements about (1) safety inspections that Otis allegedly passed, (2) documents that it subpoenaed, and (3) a deposition of "Ray Diehl." Given these violations, we *sua sponte* strike this section of the brief.

¶ 26     Otis's "Statement of Facts" also contains serious violations. Otis states that "inspection reports consistently gave the elevator a clean bill of health, including having passed inspection in May 2015 and again in November 2015." Otis includes no record citation for this statement, and nothing in the record supports it. Moreover, Otis again references the deposition of "Ray Diehl," although the record contains no such document. In its reply brief, Otis again relies on these nonrecord matters. We will not strike Otis's statement of facts or reply brief, but we will disregard the preceding improper portions.

¶ 27                              B. General Principles

¶ 28     We turn to the merits. Otis contends that the trial court erred in dismissing its third-party complaint, because Advocate did not establish as a matter of law that section 13-204(b) of the Code barred it. Otis asks that we enter a straight reversal of the dismissal and let its third-party

claim proceed or, alternatively, determine that an issue of fact exists as to when the two-year limitation period for the claim commenced and remand for a hearing to resolve that issue.

¶ 29    The purpose of a motion under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2022)) is " 'to dispose of issues of law and easily proved issues of fact at the outset of litigation.' " *Alave v. City of Chicago*, 2023 IL 128602, ¶ 34 (quoting *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003)).

> "A motion to dismiss under section 2-619(a) admits the legal sufficiency of the [nonmoving party's] claim but asserts certain defects or defenses outside the pleadings which defeat the claim. [Citation.] When ruling on the motion, the court should construe the pleadings and supporting documents in the light most favorable to the nonmoving party. [Citation.] The court must accept as true all well-pleaded facts in [the] complaint and all inferences that may reasonably be drawn in [the nonmoving party's] favor. [Citation.] The question on appeal is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' [Citation.] Our review is *de novo*. [Citation.]" *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 30    Section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2022)) permits the dismissal of an action not commenced within the time limited by law. As noted, section 13-204(b) of the Code (*id.* § 13-204(b)) states in relevant part that

> "no action for contribution *** may be commenced more than 2 years after the party seeking contribution *** has been served with process in the underlying action or more than 2 years from the time the party ***, knew or should reasonably have known of an act or omission giving rise to the action for contribution ***, whichever period expires later."

The question of when a party seeking contribution acquires sufficient knowledge to trigger the statute of limitations is ordinarily one for the trier of fact. *Brdar v. Cottrell, Inc.*, 372 Ill. App. 3d 690, 705 (2007). A court should dismiss a contribution action as untimely only if it is apparent from the undisputed facts that, more than two years before filing its claim, the third-party plaintiff reasonably should have known it had a contribution claim. *Id.* at 706.

¶ 31   As Otis filed its contribution claim on June 23, 2023, the question is whether we can conclude, as a matter of law, that section 13-204(b)'s limitation period started at least as early as June 22, 2021. We turn to the pertinent facts of record, separating facts that arose before the crucial date from those arising afterward.

¶ 32                 C. Pertinent Facts Before June 23, 2021

¶ 33   On August 21, 2015, Leticia was injured. On or about September 1, 2015, she filed a workers' compensation action against Advocate, and on September 14, 2016, she filed her complaint against Otis.

¶ 34   According to Barclay's deposition, (1) on January 19, 2016, before plaintiffs filed this action, Leticia told Barclay that, on August 21, 2015, she was injured when an elevator had a "power surge" and suddenly dropped five floors with loss of control; (2) Barclay did not independently investigate or analyze the elevator incident; and (3) Leticia was Barclay's sole source for the information that a power surge caused the elevator incident.

¶ 35   Advocate, in its reply in support of its motion to dismiss, argued as follows based on Barclay's deposition testimony:

"Dr. Barclay was relying on a preexisting medical record which documented how [Leticia] explained that a power surge may have been at issue on the date of the incident ***. Furthermore, while [Advocate] was not involved in this matter during initial discovery, it

is understood that the [m]edical [r]ecord was created on March 3, 2016. As such, it is fair to presume that [Otis] had been in possession of the [m]edical [r]ecord long before Dr. Barclay's deposition on February 27, 2023."

¶ 36    By "medical record," Advocate apparently meant the patient history Barclay said she took from Leticia on January 19, 2016. Nothing in the record suggests that Leticia, lacking any known expertise about elevators or electrical power, had a basis in mind for asserting that a power surge caused the elevator incident.

¶ 37    On September 14, 2016, plaintiffs filed their complaint and served it on Otis. By then, Otis knew that Leticia had been injured while riding in an Otis elevator in the facility. The complaint alleged nothing about a power surge. On October 12, 2016, Otis entered its appearance.

¶ 38    On April 5, 2019, Leticia was deposed. Asked whether she had "any idea what caused the alleged problem" with the elevator, Leticia responded, "No." Asked whether she had "any idea what [ ]happened[ ]" or "why it happened," she responded, "No." Otis's counsel implicitly referenced Barclay's medical note from January 19, 2016, in which she recorded that Leticia told her that a power surge had caused the accident. Leticia testified that she did not recall saying this to Barclay. Regardless, her testimony contradicted—or repudiated—what she allegedly told Barclay. As Advocate notes, the Barclay deposition shows that Otis's counsel was aware of Barclay's January 19, 2016, note.

¶ 39                              D. Pertinent Facts After June 23, 2021

¶ 40    On July 29, 2022, almost six years after Otis filed its appearance, Pirtle was deposed. He testified that there had been perhaps two dozen power surges since he started working at the facility. He did not know whether power surges or losses had ever prevented the elevators from running.

¶ 41     On August 24, 2022, Sheehan was deposed. She testified that power surges "happen[ed] a lot," but she had no idea whether a power surge had anything to do with Leticia's accident.

¶ 42     On February 27, 2023, Barclay was deposed (as described in our recitation of pre-June 23, 2021, events).

¶ 43                    E. Discussion of Pertinent Facts

¶ 44     We now apply the law to the foregoing evidence. We note that the parties rely primarily on cases that decide whether an *initial* complaint was timely and thus consider when *the plaintiff* knew or should have known of (1) an injury and (2) wrongful causation. See, *e.g.*, *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 12 (citing 735 ILCS 5/13-214.3(b) (West 2012)). Here, however, we must apply the statutory provision governing whether a contribution action filed by the defendant against a third party was timely. Under section 13-204(b), the issue is when *the defendant* knew or should have known of "*an act or omission* [by the third party] giving rise to the action for contribution." (Emphasis added.) 735 ILCS 5/13-204(b) (West 2022). Here, Otis contends that only within two years of filing the third-party complaint was it on notice of the crucial act or omission—Advocate's failure to control power surges or enable its elevators to handle them properly.

¶ 45     In holding that Otis knew or should have known of this failure more than two years before it filed the contribution action, the trial court relied on Leticia's deposition of April 5, 2019, which showed Otis's awareness of Barclay's medical record's reference to the alleged power surge.

¶ 46     Otis points out first that Leticia offered no basis for her conclusion that a power surge caused the accident. Second, although the most plausible hypothesis is that Leticia heard this theory from someone else, nobody was ever identified as a source, and Barclay acknowledged that she had heard the power-surge theory only from Leticia. Third, in her deposition on April 5, 2019,

Leticia testified that she had no idea what caused her accident and that she had not identified a cause in answering interrogatories. Fourth, Advocate did not establish that Otis knew or should have known that a single power surge would raise more than the speculative possibility that it was caused by an act or omission by Advocate, as opposed to something beyond Advocate's control (possibly severe weather or a general malfunction in the local power supply). We cannot say that, as a matter of law, Leticia's statement to Barclay was sufficient to alert Otis to an act or omission by Advocate so as to trigger the statute of limitations.

¶ 47     There was no other basis for finding that Otis was on notice of an act or omission by Advocate more than two years before it filed the third-party complaint. A complaint's allegations can put a potential third-party plaintiff on inquiry notice (*Brdar*, 372 Ill. App. 3d at 706), but the complaint here alleged nothing that, as a matter of law, should have put Otis on inquiry notice. As of September 14, 2016, Otis knew that Leticia had been injured on premises owned, used, and controlled by Advocate. However, that fact did not imply any particular act or omission by Advocate. More was needed. Further, although Advocate points to Otis's knowledge at some point that Leticia had a workers' compensation claim against Advocate, that implied nothing about Advocate's conduct or potential culpability. See *Hall v. Archer-Daniels-Midland Co.*, 122 Ill. 2d 448, 455 (1988) ("[T]he obligation imposed on an employer by the Workers' Compensation Act is based on status alone, and it arises without regard to the existence of tortious conduct on the part of the employer."). This factor is of no help in deciding whether, as a matter of law, the contribution action was untimely. Also, Advocate notes that the elevator at issue was inspected in January 2020, but it has not argued in the trial court or here what in the inspection results would put Otis on notice of any act or omission by Advocate that contributed to the accident.

¶ 48     Advocate makes much of the passage of time between plaintiffs' complaint and Pirtle's July 2022 deposition, which Otis argues was when it was put on notice. It is a fair question why Otis took almost six years from the date it was served with plaintiffs' complaint to find and depose someone who could testify that power surges at the facility were not an uncommon occurrence. However, in our *de novo* review, we must construe the record strictly against Advocate as the moving party (see *Henderson Square Condominium Ass'n v. Lab Townhomes, LLC,* 2015 IL 118139, ¶ 34), so we attach little weight to the delay.

¶ 49     We conclude that whether Otis satisfied section 13-204(b)'s discovery rule is a disputed question of fact that was not to be decided on a motion to dismiss. See *id.* ¶ 59. Therefore, we reverse the judgment and we remand the cause for further proceedings consistent with this opinion.

¶ 50                                    III. CONCLUSION

¶ 51     For the reasons stated, we reverse the judgment of the circuit court of Kane County, and we remand the cause.

¶ 52     Reversed and remanded.